# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: DECEMBER 16, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0368-MR

BOBBY L. HAMMONDS      APPELLANT

ON APPEAL FROM JACKSON CIRCUIT COURT
HONORABLE OSCAR G. HOUSE, JUDGE
CASE NO. 18-CR-00021-001

V.

COMMONWEALTH OF KENTUCKY      APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

This case comes before the Court on appeal as a matter of right[1] by Bobby Hammonds, the Appellant, from the judgment and sentence of the Jackson Circuit Court. After a jury trial, Bobby was found guilty of two counts of complicity to commit murder and one count of tampering with evidence. The jury recommended a sentence of fifty years on each count of complicity to commit murder, and five years for the tampering with evidence charge, to be served concurrently for a total of fifty years. The Circuit Court followed the recommendation and imposed the sentence. Bobby timely appealed.

He puts forth only two arguments. First, that he was entitled to a directed verdict as there was insufficient evidence on the element of intent for

---

[1] Ky. Const. § 110(2)(b).

the complicity to commit murder charges. Second, hearsay testimony of Detective Adam Hall unduly prejudiced the jury.

For the following reasons, we affirm.

## I. Factual and Procedural Background

On December 28, 2017, the season of peace and goodwill amongst men was shattered by the murders of Joie Marcum and Whitney Venable. For Bobby and Terry Hammonds,[2] the day was practically conceived in violence.

That morning, Marcum and Venable drove to the Hammonds' property. An altercation between Terry and Marcum ensued. Precisely why is unclear from the record. One witness, Greta Hammonds, the now-estranged wife of Terry, testified Marcum and the Hammonds had a pre-existing dispute over money. Another witness, Pam Lainhart, Bobby's former girlfriend, was present at the house that morning, testified Marcum pointed a gun at Venable, causing Terry to disarm him and the two to scuffle.[3] Eventually the fight ended. Marcum declared he was going to get a friend, Joe Isaacs, and would be back. He and Venable drove away.

Marcum's threat to return with aid caused Terry and Bobby to search for a gun. Bobby eventually acquired a .30-30 rifle although it is unclear who

[2] Terry Hammonds is brother to Bobby. He is integrally involved in the events described so we refer to each brother by his first name. Terry has not yet gone to trial; thus, the presumption of innocence still attaches to him. *Cecil v. Commonwealth*, 294 Ky. 44, 170 S.W.2d 882, 885 (1943). For Bobby, however, no such presumption exists on appeal. *Tamme v. Commonwealth*, 973 S.W.2d 13, 39 (Ky. 1998) (Noting "the presumption of innocence applies only to the guilt phase of a trial.")

[3] Another discrepancy about what occurred that morning relates to Bobby's involvement in the altercation. Lainhart testified he did not participate at all. Greta Hammonds testified that he did participate and had used a hammer to beat Marcum.

provided the rifle to him. In a police interview, Bobby stated they drove to the homes of two individuals searching for a gun but were denied. By the time they arrived at the home of Matt Harrison, Bobby had the rifle. Harrison happened to have a few .30-30 rounds which Bobby accepted when offered.

The brothers then drove to the home of Joe Isaacs. They were driving Lainhart's black SUV. They arrived at approximately 1:38 p.m. Video evidence from a neighbor's security camera shows the incident. Testimony indicates the brothers drove up the driveway speedily, causing Issacs to go outside and see what the commotion was about. Terry, who was driving, struck Isaacs with the vehicle but not hard enough to force Issacs to the ground. An argument ensued but quickly ended. The video shows the brothers leaving just two minutes later, at 1:40 p.m. Heather Owens, Isaacs' girlfriend, testified as they were leaving Terry yelled "shoot him." Bobby stuck the rifle out of the window and fired one round in the air.

Approximately one hour later, Brian Davidson was driving along Rock Lick Road, which is practically a one-lane road. Davidson encountered a car stalled in the middle of it. It was the vehicle of Marcum and Venable. Both were present but passed out from narcotics.[4] Davidson knocked on the window and roused Marcum, who informed Davidson the car was out of gas and asked if he could call his mother, Carol Isaacs. Davidson had no cell service but promised to make the call. He maneuvered around Marcum's vehicle and made it to the

---

[4] The Medical Examiner who performed the autopsies testified to several drugs in both victims' systems.

end of the road where cell service was restored. He encountered Donnie Gray along the way and told him of Marcum's vehicle problem. Gray informed Davidson he was not going that far down the road. Davidson stopped to call Ms. Isaacs and informed her Marcum needed gas. Records indicate this call was made at 2:59 p.m.

While making that call, Davidson saw a black SUV turn down Rock Lick Road in the direction of Marcum's vehicle. He testified he knew the vehicle to belong to Terry but could not say whether Terry was driving or if multiple persons were in the vehicle. Instead, he only conceded he may have told the police during interviews that he saw Terry driving.

Charisma Cook testified she got stuck in traffic due to road work on her way from work shortly after 3:00 p.m. While in line she saw a black SUV speedily approaching from behind and ignoring directions to stop by the road worker.[5]

Just before the road work incident, back on Rock Lick Road, Kenneth and Denise Cox turned onto the road. Kenneth testified he saw the black SUV driving speedily towards him. He identified both Terry and Bobby. Then they came upon Marcum's vehicle engulfed in flames. At 3:16 pm, Denise Cox called emergency services for help. The authorities came, put out the fire, and secured the scene.

---

[5] The road worker, Kenneth Baldwin, testified that he was directing traffic and recounted the black SUV driving by, ignoring him. He placed that incident at 2-2:30 p.m. But he also testified that he saw smoke coming from close by contemporaneous with that incident.

Greta Hammonds testified both brothers separately confessed to her the details of the murders. Terry confessed they encountered Marcum and Venable on Rock Lick Road but maintained Marcum drew his gun on the brothers, so Terry shot him in the stomach. The bullet passed through Marcum's body and entered Venable. She was alive but in obvious pain. Terry shot her in the head and set the car aflame.

Subsequently, Greta testified, she told Bobby of Terry's confession. Bobby denied that Terry shot the victims. Instead, Bobby claimed responsibility stating he shot Marcum in the head. He also attested to the bullet passing through Marcum and entering Venable. He then told her she would not suffer long and shot her in the head. Bobby did agree, however, Terry set the car on fire. Bobby also told Greta he could not get the image of Venable out of his head.

The fire did significant damage, particularly to Venable's body. The Medical Examiner could definitively state Marcum died from a gunshot wound to the head and was dead prior to the fire. Venable's cause of death, however, could only be attributed to an unknown head trauma but she too died before the fire.

Det. Adam Hall of the Kentucky State Police was the lead investigator. Pertinent to our review, Det. Hall testified to the recovery of a .30-30 shell casing at the scene of the crime. Sometime after the murders, Bobby sought to get rid of his .30-30 rifle by selling it to a friend, Anthony Turner. Turner then sold it to Mark Foley. Foley did some refurbishing work and pawned the gun in

5

Estill County. The rifle was recovered at the pawn shop. Lawrence Pilcher, KSP's firearms examiner, testified the shell casing recovered at the scene matched the recovered rifle.

During Det. Hall's testimony, he made some statements that were told to him out of court by others. At one point, he testified,

> I learned from a trooper who had spoken with Carol Isaacs who is the mother of Joie Marcum that she had received a phone call earlier that day from Brian Davidson that he had been travelling across Rock Lick and observed Joie Marcum and Whitney Venable in fact stopped on Rock Lick Road. He made contact . . . and then Joie informed Brian that he had run out of gas and asked him to call his mother to see if she could assist so he drove to the top of Rock Lick.

At this point, Bobby's counsel objected to hearsay. The trial court overruled him. In recounting his interaction with Davidson, Det. Hall testified,

> I learned from him that he was traveling across Rock Lick . . . at what time he observed or came upon what he recognized to be Joie Marcum and Whitney Venable stopped on Rock Lick Road. And he stopped his vehicle, exited, and made contact with them. He described them to be either passed out or sleeping. He had to peck on the window to awake them.

Further testimony of Det. Hall pertained to Donnie Gray,

> Mr. Gray wasn't able to provide any information about the vehicle fire. He was coming from Sand Gap to deliver wood, turning down Rock Lick, and the residence he was delivering wood to was prior to reaching the vehicle fire. But he did witness or observe a red pickup that he ran into or met on Rock Lick Road.

Finally, Det. Hall made statements as to a brief interview he had with Terry,

> Uh, he was agitated. We briefly spoke and I had asked him about the events that had transpired at Joe Issacs and Heather Owens, the dispute, and he stated that was over and done with. And then I had asked him about them being seen traveling down Rock Lick just prior to this vehicle fire . . . and Terry stated he was done talking and didn't want to talk any further.

6

Approximately two hours after Det. Hall's testimony was completed, and two other witnesses had testified, Judge House called the attorneys to the bench. He informed defense counsel he had misspoken earlier when he overruled the hearsay objection. Judge House conveyed his belief the statements had not caused any prejudice. He said, "it didn't seem to be any harm, any foul[.]" Defense counsel agreed, and clarified his objection was to prevent Det. Hall "getting too much in." Judge House stated, "I don't think he did[.]" Counsel agreed. Finally, Judge House asked, "We don't need to correct that by saying anything to the jury, or anything like that?" Defense counsel responded in the negative. As a result of this colloquy, we do not believe the hearsay issue has been sufficiently preserved for review.[6]

After the Commonwealth concluded its case-in-chief, Bobby made a motion for a directed verdict arguing there was a lack of evidence on the element of intent. The motion was denied. The trial court was then informed that Bobby would not be calling any witnesses. The defense rested and renewed the motion for directed verdict, repeating the same arguments. The second motion was denied as well. After the guilty verdict had been rendered, Bobby filed a motion for a new trial also arguing insufficient evidence as to intent. That motion was denied. This issue is sufficiently preserved for review.

We now address the merits of the appeal.

---

[6] When lodging an objection, counsel must make "known to the court the action which that party desires the court to take . . ." RCr 9.22. Defense counsel not only did not inform the court of any remedial action it sought for the hearsay but twice affirmed that no harm occurred and denied the need for any remedial action at all.

## II. Standards of Review

We employ two different standards for the separate issues addressed. First, "even though insufficiently raised or preserved for review . . ." we will briefly consider the hearsay issue for palpable error and reverse the conviction only if "manifest injustice has resulted from the error." RCr[7] 10.26.

Secondly, as to the denial of a directed verdict, we recently stated:

> [t]he legal standards for a directed verdict motion are clear: 'if under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal.' *Trowel v. Commonwealth*, 550 S.W.2d 530, 533 (Ky. 1977). 'The trial court must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion, and a directed verdict should not be given unless the evidence is insufficient to sustain a conviction. The evidence presented must be accepted as true. The credibility and the weight to be given the testimony are questions for the jury exclusively.' *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983). The standard for appellate review is equally clear: 'on appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.' *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

*Eversole v. Commonwealth*, 600 S.W.3d 209, 217-18 (Ky. 2020). "We construe all evidence below in a light most favorable to the Commonwealth." *Commonwealth v. Jones*, 497 S.W.3d 222, 225 (Ky. 2016).

## III. Analysis

### A. Det. Hall's Hearsay Testimony was Not Palpable Error

---

[7] Kentucky Rules of Criminal Procedure.

The Commonwealth concedes that Det. Hall's statements were hearsay. We agree. Nonetheless, to justify reversing a conviction their admission "must be so grave in nature that if it were uncorrected, it would seriously affect the fairness of the proceedings." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). Indeed, if there is not a substantial possibility that the result in the case would have been different but for the admission of the hearsay statements, then there can be no palpable error. *Id.*

Det. Hall's hearsay statements regarding Carol Issacs and Brian Davidson are not palpable error because both testified to the same facts that Det. Hall recounted, and both were subject to cross-examination. As to the hearsay statements of Donnie Gray, we find no palpable error because they had no relevance to any issue at trial. They did not inculpate any person as to any element of any crime charged. Gray's relation to the events surrounding the murders is so inconsequential neither party called him as a witness at trial.

Finally, as to the hearsay statements of Terry, the first one admitted was the dispute at Joe Isaacs' house "was over and done with." This would tend to prove that the incident did in fact occur. But Bobby never denied the occurrence and video evidence and other eyewitnesses demonstrated it did in fact happen. Although the incident at Isaacs' goes to Bobby's participation in the day's events, because it was uncontested, and evidence overwhelmingly proved it happened there is no palpable error.

As to Terry's second hearsay statement that he was "done talking" after Det. Hall asked about the car fire, this is, at worst, a plainspoken invocation of

9

the right to remain silent by Bobby's co-defendant. It did not inculpate Bobby in any element of any crime charged, and for that reason we find no palpable error.

**B. The Refusal to Grant a Directed Verdict Was Not Error**

Bobby's argument as to the denial of a directed verdict is based wholly upon the alleged lack of evidence as to his intent for Marcum and Venable to be killed that day. He argues the Commonwealth did nothing more than provide a scintilla of circumstantial evidence.

"A person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he: Aids, counsels, or attempts to aid such person in planning or committing the offense." KRS 502.020(1)(b). "A person is guilty of murder when: With intent to cause the death of another person, he causes the death of such person or of a third person." KRS 507.020(1)(a).

"[A]ccomplice liability for intentional homicide can be imposed under KRS 502.020(1) where there is evidence that a defendant 'actively participated in the actions of the principal, or failed in a legal duty to prevent those actions, with the intent that the victim's death . . . would result.'" *Young v. Commonwealth*, 426 S.W.3d 577, 581 (Ky. 2014) (quoting *Tharp v. Commonwealth*, 40 S.W.3d 356, 361 (Ky. 2000)).

"The language of KRS 502.020(1) is 'broad enough to embrace acts, words, agreements, encouragement, incitement, and every form of participation

10

in concerted criminal activity.'" *Id.* (internal citation omitted). Clarifying conspiracy under KRS 502.020, we have held it

> does not necessarily require detailed planning and a concomitant lengthy passage of time. All that is required is that defendants agree to act in concert to achieve a particular objective and that at least one of them commit that objective. *Commonwealth v. Wolford,* 4 S.W.3d 534, 540 (Ky.1999). 'The existence of a conspiracy can be proven . . . by circumstantial evidence.' *Id.* However, absent a showing of other facts and circumstances connecting a defendant with the crime, mere presence at the scene of the crime is not sufficient to attach guilt to [the] defendant.

*Rogers v. Commonwealth,* 315 S.W.3d 303, 310 (Ky. 2010). "Intent can be inferred from the actions of an accused and the surrounding circumstances. The jury has wide latitude in inferring intent from the evidence." *McCoy v. Commonwealth,* 553 S.W.3d 816, 822 (Ky. 2018) (internal quotation and citation omitted).

We need not survey every piece of evidence produced by the Commonwealth during its case-in-chief. It suffices to highlight only that evidence which, upon review, demonstrates the guilty verdict was not clearly unreasonable. First, there was the .30-30 rifle recovered from the pawn shop, which the KSP proved was the murder weapon by matching it to the shell casing found at the scene of the crime. There was testimony from Turner he purchased the .30-30 rifle from Bobby subsequent to the murders and the testimony of Foley he purchased the same rifle from Turner, refurbished it, and then pawned it at the pawn shop where the KSP recovered it. Finally, there was the testimony of Harrison that he knew Bobby had a .30-30 and he had given

11

him a few rounds to use prior to the murders occurring. This evidence positively linked Bobby to the crime scene and did more than merely place him there. From this evidence, the jury could legitimately infer planning and preparation, i.e., intent.

Second, several witnesses testified they either saw the Hammonds in a black SUV, or at least saw a black SUV they associated with the Hammonds, at or near the scene of the crime, contemporaneous to when the deaths occurred. Additionally, Lainhart testified the black SUV was her vehicle, which she let the brothers use that day, and they did not come home until late that night. Finally, Isaacs and Owens, as well as video evidence from their neighbor's security camera, confirmed that the Hammonds were indeed driving the black SUV that day. Again, this evidence does more than merely place Bobby at the scene. A jury could legitimately infer participatory, concerted action by him.

Finally, there was the testimony of Greta Hammonds who detailed the separate, albeit mutually exclusive confessions of both Bobby and Terry. Obviously, the jury believed Terry to have been the principal actor in the murders, lest they could not have convicted Bobby for complicity to murder. But deeper into the minds of the jury we will not delve. The trial court was required to assume the evidence against Bobby was true, including his confession. Reviewing the evidence as a whole, we do not believe it was clearly unreasonable for the jury to find guilt as to the element of intent for complicity to commit murder. *Eversole*, 600 S.W.3d at 218.

## IV. CONCLUSION

For the aforementioned reasons, we find no palpable error in the admission of hearsay statements by Det. Hall, nor do we believe it was clearly unreasonable for the jury to find guilt as to the element of intent for complicity to commit murder. The conviction of Bobby Hammonds is affirmed.

All sitting. Minton, C.J., and Hughes, Nickell, Lambert, VanMeter, and Conley, JJ., concur. Keller, J. concurs in result only.

COUNSEL FOR APPELLANT:

Emily Holt Rhorer
Assistant Public Advocate
Dept. of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General