RENDERED: MARCH 3, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0953-MR

GENESSON BERAUT
APPELLANT

v.
APPEAL FROM HENDERSON CIRCUIT COURT
HONORABLE KAREN L. WILSON, JUDGE
ACTION NO. 20-CR-00005

COMMONWEALTH OF KENTUCKY
APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, JONES, AND MCNEILL, JUDGES.

JONES, JUDGE: Genesson Beraut appeals from the Henderson Circuit Court's judgment following conviction at his jury trial. The trial court sentenced Beraut to ten years' imprisonment after he was found guilty of complicity to a first-degree robbery committed by his associate, Junior Balan. After a thorough review of the facts and the law, we affirm.

# I. BACKGROUND

At approximately 2:15 p.m. on November 13, 2019, Caitlyn Singh and Kimberly McClure were working at 41 North Express Liquor, a spirit shop located next to Highway 41 in Henderson, when two black men of about medium height walked in wearing hooded sweatshirts or jackets. The raised hoods on both men were cinched tight, partially obscuring their faces. Security camera video footage from inside the store showed the men briefly conversing before one of the men, later identified as Beraut, followed Caitlyn into the "employees only" storeroom. He began chatting with her while simultaneously raising one leg and placing it on a box across the aisle, blocking her exit into the main area of the store. Caitlyn initially thought he was flirting with her, though she later testified that Beraut also asked her, "what would [she] do if he had a gun?" At first, she thought he was joking, but he seemed serious. Caitlyn became angry and ordered him out of the storeroom. She tried to move past Beraut's raised leg, and he eventually complied and allowed her to pass.

When Caitlyn emerged into the main part of the store, she saw Kimberly at the register, hands raised. While Beraut was with Caitlyn in the storeroom, Balan had pointed a handgun at Kimberly and demanded the cash from the register. After Kimberly handed over the money, Balan shouted, "let's go!" and the two men bolted out the front door of the establishment. Caitlyn and

Kimberly ran out the door after them, attempting to keep Balan and Beraut in view as they fled on foot. The two men ran away from Highway 41, down Watson Lane and past a church, at which point the women lost sight of them.

Meanwhile, Dominique Milan, a friend of Kimberly's, was driving toward the store when she saw the women running from it. She asked Kimberly what was happening, and Kimberly said the store had been robbed. Dominique got to the store, turned around, and came back to find Kimberly. The women then saw a gold Buick drive past with Beraut behind the wheel. Kimberly told Dominique that those were the people who robbed her. At this point, Dominique, who was still in her vehicle, called 911 to report the robbery, described the gold Buick as the suspect vehicle, and also told the dispatcher that she was currently following the Buick. She gave turn-by-turn directions to the police until they caught up to her and initiated a stop of the Buick. The vehicle had three occupants: Beraut in the driver's seat, Beraut's pregnant girlfriend in the passenger seat, and Balan in the back seat. After obtaining a search warrant for the vehicle, police investigators recovered $445 in cash inside a pink fanny pack located on the floorboard of the front passenger seat, where it was covered by a black hooded jacket. Approximately four months after this incident, a rusting handgun resembling the one used in the robbery was found in the yard of a residence near the church where the two men had fled.

When questioned by Henderson police, Beraut initially declined to provide his personal information and stated he did not know anything about the robbery. He also initially told police he had not been inside the liquor store. In a second interview, however, Beraut admitted his previous statement was false and he had been inside the liquor store, but he was only there to flirt with the clerk. The interviewer, Detective Jake Isonhood, stopped Beraut's account to express his disbelief that Beraut would go inside the liquor store and flirt with Caitlyn while his pregnant girlfriend was waiting in the vehicle outside. Reviewing the security camera footage from the store, Detective Isonhood later described it to the jury in the following way:

> They walk in, kind of walk around a little bit. At one point in time, you see both of them go into the corner, almost like they are talking, that is what it appears they are doing, at which time Mr. Balan goes around, goes toward the counter where Kim is, at which time Mr. Beraut walks around and looks to see what Mr. Balan is doing and then goes towards the back of the store.
>
> Once in the back of the store, he places his leg on the box, preventing Caitlyn from going out. You see her try to shove the foot. She is not able to. She points and then eventually they work their way out.
>
> Whenever they work their way out you can hear, because it is audio and video on the one where Kim is at, you can hear Mr. Balan yell, "let's go," and that's when both of them, not just one of them, take off running out of the store.

As a result of this incident, the Henderson County grand jury indicted Beraut on one count of complicity[1] to first-degree robbery.[2]  During Beraut's jury trial, the Commonwealth presented testimony from Caitlyn, Dominique, and Detective Isonhood detailing the aforementioned sequence of events.  In addition, Officer Jeremy Ebelhar, also of the Henderson Police Department, testified regarding the physical items recovered from the scene, *i.e.*, the clothing, fanny pack, and cash recovered in the search of the gold Buick, as well as the handgun which was found four months afterward.  The Commonwealth also provided the jury with the opportunity to view the liquor store's security camera footage.

Beraut testified in his own defense.  He conceded that the evidence pointed to Balan robbing the liquor store but vigorously asserted that he knew nothing about Balan's plan.  Beraut testified that he, his girlfriend, and Balan were on a road trip to Alabama when they stopped to smoke marijuana.  According to Beraut, Balan did not want to drink the beer they had in the car, and so he went inside the store to purchase liquor.  Beraut claimed he followed Balan inside the store because he was out of paper to roll marijuana cigarettes.  He asserted the hood was cinched tight around his face because it was cold outside.  While inside the store, Beraut said that Balan encouraged him to flirt with the clerk.  Beraut

---

[1]  Kentucky Revised Statutes (KRS) 502.020.

[2]  KRS 515.020, a Class B felony.

admitted he placed his leg on the box to prevent Caitlyn from walking away, but he claimed that his goal was to keep her talking to him as long as possible to increase his chances of getting her telephone number. Beraut admitted he may have talked to Caitlyn about a gun, but he did not remember the specific context for that particular topic. Beraut then claimed he did not know that Balan was carrying a gun, nor that Balan intended to rob the clerk, and he ran when Balan yelled "let's go" because he wanted to get away from the situation.

Of particular relevance to this appeal, the prosecutor questioned Beraut on cross-examination regarding his current relationship with Balan. The prosecutor asked if Beraut was still upset with Balan about the robbery. When Beraut answered affirmatively, the prosecutor asked why, if he were so upset with Balan, that he continued to have conversations with him in telephone calls from jail. Beraut answered that he still talks to him because this situation is not finished, and he wants Balan to tell the truth about the incident. Beraut clarified that he does not hate Balan, but he is no friend. The prosecutor, placing a different slant on the conversations, asked Beraut if he was conversing with Balan in order to "get[] a story straight," *i.e.*, collaborate on a narrative regarding the robbery.

After the prosecutor finished its cross-examination, defense counsel approached the bench and asked to confer with Beraut before examining him on redirect. The prosecutor objected, and defense counsel took issue with the use of

Beraut's telephone calls from the jail in the prosecutor's cross-examination, stating that these telephone calls were not disclosed to the defense in discovery. The prosecutor pointed out that defense counsel had never actually moved for discovery in this case; nonetheless, the prosecutor's office had "tried to provide [counsel] with everything [it] had, voluntarily." Defense counsel admitted he was aware Beraut had conversed with Balan, but he was not aware that the prosecutor also had knowledge of those calls. The prosecutor stated he did not actually possess the recorded telephone calls from the jail, but he had merely become aware that Beraut had made calls to Balan the day before trial. In short, the prosecutor asserted he had no evidence to disclose because he was unaware of the contents of any specific conversations between the two men.

At this point, defense counsel moved for a mistrial on the basis that the Commonwealth had withheld evidence which was inculpatory or exculpatory or possibly both. The trial court denied the motion on the basis that defense counsel was already aware of the contact between Beraut and Balan. The trial court also expressed its wish for counsel to get away from this line of questioning altogether. Defense counsel then expressed how it was unfair that he was unable to question Beraut about the telephone calls on redirect in order to address what the Commonwealth had brought up in cross-examination. The trial court then allowed Beraut to testify by avowal that he did not conspire with Balan about collaborating

-7-

on a story. Beraut asserted that Balan was willing to tell the truth about his innocence, but he was now out of the country and residing in Haiti.[3]

After the submission of all evidence, the jury deliberated and found Beraut guilty of complicity to first-degree robbery. The jury thereafter recommended a sentence of ten years' imprisonment, and the trial court sentenced Beraut in accordance with the jury's recommendation. This appeal followed.

## II. ANALYSIS

Beraut presents three issues to this Court on appeal. First, he argues the trial court erroneously denied his motion for a directed verdict of acquittal. Second, Beraut argues the trial court erroneously denied his request to instruct the jury on facilitation. Third, Beraut argues the Commonwealth failed to disclose exculpatory evidence when it did not inform defense counsel about his telephone calls to Balan from jail. We will consider each issue in turn.

In his first issue on appeal, Beraut contends the trial court erroneously failed to grant his motion for a directed verdict, asserting the Commonwealth failed to produce evidence showing he "had the requisite prior knowledge and intent to justify a conviction for complicity to commit robbery." (Appellant's Brief at 10.)

---

[3] The record does not explicitly state what happened to Junior Balan following the robbery. After the police stopped the gold Buick, Beraut and his girlfriend were taken to the police station while Balan was taken away separately by ambulance for unknown reasons. There is nothing in the record to indicate whether Balan was in jail awaiting trial, imprisoned, found innocent after a separate trial – or whether he somehow ended up in Haiti, as Beraut attested.

Beraut asserts the Commonwealth's case fails to prove that he knew Balan intended to rob the liquor store or that he aided Balan in the commission of the robbery.

In a preserved motion for directed verdict, "the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth" and "must assume that the evidence for the Commonwealth is true[.]" *Hall v. Commonwealth*, 645 S.W.3d 383, 392 (Ky. 2022) (quoting *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)). Furthermore, to defeat a preserved motion for directed verdict, "the Commonwealth must only produce 'more than a mere scintilla of evidence.'" *Lackey v. Commonwealth*, 468 S.W.3d 348, 352 (Ky. 2015) (quoting *Benham*, 816 S.W.2d at 187). Beraut contends this issue is "partially preserved" because he moved for a directed verdict at the conclusion of the Commonwealth's case but failed to renew the motion at the close of the defense's case. Beraut's claim of "partial preservation" is incorrect because a failure to renew a directed verdict motion results in unpreserved error. "[E]ven the most specific motion for a directed verdict that is made at the close of the Commonwealth's case but not renewed at the close of all evidence . . . is insufficient to preserve an error based on insufficiency of the evidence." *Early v. Commonwealth*, 470 S.W.3d 729, 733 (Ky. 2015) (internal quotation marks and citation omitted).

Nonetheless, an unpreserved directed verdict motion may still be reviewed for palpable error under RCr[4] 10.26; *see Potts v. Commonwealth*, 172 S.W.3d 345, 348 (Ky. 2005). "Palpable error requires a showing that the alleged error affected the 'substantial rights' of a defendant, where relief may be granted 'upon a determination that manifest injustice has resulted from the error.'" *McCoy v. Commonwealth*, 553 S.W.3d 816, 822 (Ky. 2018) (quoting RCr 10.26). Manifest injustice occurs when "the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.'" *Id.* (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006)).

The trial court's instruction on complicity mirrored the relevant statutory language from KRS 502.020:

> (1) A person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he:
>
>> (a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or
>>
>> (b) Aids, counsels, or attempts to aid such person in planning or committing the offense[.]

Beraut claims he was entitled to a directed verdict because the Commonwealth failed to produce evidence that Beraut knew Balan intended to rob the liquor store

---

[4] Kentucky Rules of Criminal Procedure.

-10-

or that he aided Balan in the attempt. However, in determining criminal liability for complicity, "[i]ntent can be inferred from the actions of an accused and the surrounding circumstances" and "[t]he jury has wide latitude in inferring intent from the evidence." *McCoy*, 553 S.W.3d at 822 (citations omitted).

The Commonwealth's evidence showed Beraut and Balan entered the liquor store with their faces partially concealed by the tightly cinched hoods on their sweatshirts. The two then briefly conferred before splitting up, at which point Beraut distracted one clerk while Balan robbed the other. The evidence then showed that Beraut immediately fled along with Balan when Balan shouted "let's go."[5] Following their flight from the liquor store, Beraut and Balan were apprehended in a vehicle Beraut was driving. The Commonwealth's evidence is largely circumstantial, but "[i]t has long been the law that the Commonwealth can prove all the elements of a crime by circumstantial evidence." *Commonwealth v. Goss*, 428 S.W.3d 619, 625 (Ky. 2014). Similarly, a motion for directed verdict may be defeated by the Commonwealth's circumstantial evidence "as long as the evidence taken as a whole shows that it was not clearly unreasonable for the jury to find guilt." *Id.* at 626 (quoting *Bussell v. Commonwealth*, 882 S.W.2d 111, 114 (Ky. 1994)).

---

[5] We note here that it is a long-standing principle of Kentucky law that "flight is always some evidence of a sense of guilt." *Day v. Commonwealth*, 361 S.W.3d 299, 303 (Ky. 2012) (quoting *Rodriguez v. Commonwealth*, 107 S.W.3d 215 (Ky. 2003) (quoting *Hord v. Commonwealth*, 227 Ky. 439, 13 S.W.2d 244, 246 (1928))).

Under the facts of this case, the Commonwealth's evidence amounts to more than a scintilla, which would suffice to defeat even a preserved directed verdict motion. Here, when the motion was not preserved for our review, we cannot say Beraut was entitled to a directed verdict as a matter of manifest injustice sufficient to show palpable error.

For his second issue on appeal, Beraut contends the trial court erroneously denied the jury an opportunity to convict him on a lesser offense when it denied his proffered jury instruction on facilitation. First-degree robbery is defined in KRS 515.020(2) as a Class B felony, punishable by a term of ten to twenty years in prison. The trial court declined to offer an instruction on facilitation, which would have allowed the jury to convict and sentence Beraut to a term of one to five years in prison as a Class D felony offender pursuant to KRS 506.080. Under that statute,

> [a] person is guilty of criminal facilitation when, acting with knowledge that another person is committing or intends to commit a crime, he engages in conduct which knowingly provides such person with means or opportunity for the commission of the crime and which in fact aids such person to commit the crime.

KRS 506.080(1).

"Generally, a trial court is obligated to instruct the jury upon every theory reasonably supported by the evidence. Each party to an action is entitled to an instruction upon his theory of the case *if there is evidence to sustain it*."

*Jackson v. Commonwealth*, 481 S.W.3d 794, 797 (Ky. 2016) (emphasis added) (internal quotation marks and citation omitted). "[A] trial court's decision on whether to instruct on a specific claim will be reviewed for abuse of discretion[.]" *Sargent v. Shaffer*, 467 S.W.3d 198, 204 (Ky. 2015), *overruled on other grounds by University Medical Center, Inc. v. Shwab*, 628 S.W.3d 112 (Ky. 2021). "[A] trial court abuses its discretion when its decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* at 203 (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

Beraut correctly states that facilitation is a lesser-included offense of complicity, citing *Chumbler v. Commonwealth*, 905 S.W.2d 488, 499 (Ky. 1995). However, "[a]n instruction on a lesser included offense requiring a different mental state from the primary offense is unwarranted unless there is evidence supporting the existence of both mental states." *Murray v. Commonwealth*, 399 S.W.3d 398, 410 (Ky. 2013) (quoting *Taylor v. Commonwealth*, 995 S.W.2d 355, 362 (Ky. 1999)). Both complicity and facilitation

> require knowledge that "the principal actor is committing or intends to commit a crime." But to prove criminal facilitation, evidence must be shown that the accused only "provided the means or opportunity to commit a crime" and is designed to convict an individual "who is 'wholly indifferent' to the actual completion of the crime." On the other hand, complicity requires the accused to "intend that the crime be committed" and engage in "solicitation, conspiracy, or some form of assistance."

*Id.* at 411 (quoting *Thompkins v. Commonwealth*, 54 S.W3d 147, 150 (Ky. 2001)).

Here, the facts of the case did not support a facilitation instruction. If the jury believed the Commonwealth's version of the facts, Beraut was guilty of complicity to first-degree robbery. However, the defense's evidence, adduced through Beraut's testimony, was that Beraut possessed *no knowledge* that Balan intended to rob the liquor store. Facilitation requires "knowledge that another person is committing or intends to commit a crime[.]" KRS 506.080(1). Beraut's evidence, if the jury accepted it as true, would make him an innocent bystander and not a facilitator.

This issue has been raised in a number of similar previous cases brought to the Kentucky Supreme Court; *see, e.g.*, *Fairley v. Commonwealth*, 527 S.W.3d 792 (Ky. 2017); *Murray v. Commonwealth*, 399 S.W.3d 398 (Ky. 2013); *Monroe v. Commonwealth*, 244 S.W.3d 69 (Ky. 2008); and *White v. Commonwealth*, 178 S.W.3d 470 (Ky. 2005). These precedents indicate that when the "evidence at trial supported only two theories: that Appellant was an active participant in planning the crime and intended that it be carried out, or that he was an innocent bystander . . . [t]here was no middle-ground violation of the facilitation statute." *Murray*, 399 S.W.3d at 411 (quoting *White*, 178 S.W.3d at 490-91). "As [the appellant] denied knowing that a robbery was ongoing, he lacked the requisite mental state to commit facilitation to first-degree robbery. Accordingly, the trial

court properly denied [the appellant's] requested jury instruction." *Fairley*, 527 S.W.3d at 800. We discern no abuse of discretion in the trial court's decision not to grant a facilitation instruction.

For Beraut's third and final issue on appeal, he contends the Commonwealth failed to disclose to the defense that it had learned of his telephone calls to Balan. In so doing, Beraut argues the Commonwealth violated its duty to disclose exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). As summarized by our Supreme Court, "[i]n *Brady*, the United States Supreme Court held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Commonwealth v. Parrish*, 471 S.W.3d 694, 697 (Ky. 2015) (quoting *Brady*, 373 U.S. at 87, 83 S. Ct. at 1196-97). The current version of the *Brady* doctrine requires the prosecutor to always disclose material exculpatory evidence to the defense. "The duty to disclose exculpatory evidence is applicable regardless of whether or not there has been a request by the accused[.]" *Commonwealth v. Bussell*, 226 S.W.3d 96, 100 (Ky. 2007) (citing *United States v. Agurs*, 427 U.S. 97, 107, 96 S. Ct. 2392, 2397, 49 L. Ed. 2d 342 (1976)).

Beraut admits he did not file a request for discovery as outlined in RCr 7.24. "Non-exculpatory discovery is a vehicle driven by the defense. . . . When 'the present appellant made no request for any discovery permitted by the rules,' there are no grounds for reversal on the purported discovery violation." *Dixon v. Commonwealth*, 519 S.W.3d 396, 400 (Ky. App. 2017) (footnote omitted) (quoting *Davis v. Commonwealth*, 463 S.W.2d 133, 135 (Ky. 1970)). The exception to this rule, as previously noted, is for material exculpatory evidence pursuant to *Brady*. The resolution of Beraut's current issue, therefore, lies in whether the Commonwealth's general knowledge that Beraut had conversed with Balan in jail was material exculpatory evidence falling under *Brady*. We hold it was not.

First, "*Brady* only applies to information 'which had been known to the prosecution but unknown to the defense.'" *Bussell*, 226 S.W.3d at 100 (quoting *Agurs*, 427 U.S. at 103, 96 S. Ct. at 2397). As the trial court noted during the trial, defense counsel admitted knowing Beraut was in contact with Balan. This alone removes the issue from *Brady*. Defense counsel argued during the trial that he knew Beraut and Balan had been speaking, but he was unaware that *the Commonwealth* was aware of that information. This is unconvincing at best; inmates and criminal defense attorneys are generally aware that jail telephone calls are recorded. *See Ward v. Commonwealth*, 587 S.W.3d 312, 319 (Ky. 2019)

("Another prosecutor explained that both parties to a jail call receive a recorded message stating that the call is being recorded, but defense counsel responded to that assertion by stating that the message also includes an assurance that attorney-client conversations are not recorded.").

Secondly, to fall under the *Brady* rule, the evidence must be material. "Undisclosed evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is the probability sufficient to undermine the confidence in the outcome." *Shegog v. Commonwealth*, 275 S.W.3d 728, 731 (Ky. App. 2008) (internal quotation marks and citations omitted). The Commonwealth provided significant evidence at trial included surveillance video of Beraut and Balan in the liquor store, eyewitness testimony, and clothing and cash seized from the vehicle. The defense case consisted of Beraut's admission that Balan committed the robbery but denial of knowledge of Balan's intention to commit the crime. On the whole, there is no reasonable probability that disclosure to the defense would have resulted in a different verdict. Beraut and Balan were friends before the robbery, and it is not surprising that they would be talking to each other after the robbery. The exact substance of those conversations was never submitted for the jury's consideration. The Commonwealth's knowledge that

Beraut and Balan conversed in jail telephone calls, without more, did not amount to material evidence.

Finally, the *Brady* rule requires the undisclosed evidence to be exculpatory. Here, the Commonwealth asked about Beraut's conversations with Balan in such a way as to define them as *inculpatory*, if anything, suggesting that the two men were concocting a common narrative to defend against the robbery charges. Beraut's own explanation of the conversations was that he was trying to convince Balan to take responsibility for the robbery and exonerate him. The Commonwealth admitted during the bench conference with the trial court that it did not know the exact substance of the conversations. Under these circumstances, we cannot say the Commonwealth withheld exculpatory information from the defense. We discern no error.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.


ALL CONCUR.

BRIEFS FOR APPELLANT:

Kayla D. Deatherage
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christina L. Romano
Assistant Attorney General
Frankfort, Kentucky