RENDERED:  MAY 6, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1668-MR

CEDRIC MCNEIL                                                    APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
ACTION NO. 12-CR-003738

COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, DIXON, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Cedric McNeil appeals from the Jefferson Circuit Court's order denying his *pro se* motion under Kentucky Rules of Criminal Procedure (RCr) 11.42 to vacate, set aside, and correct his sentence after the trial court only provided an evidentiary hearing on one of his numerous claims of ineffective assistance of counsel.  McNeil appeals the denial of three of his

ineffective assistance of counsel claims, including the one on which he received the evidentiary hearing. We affirm.

On December 6, 2012, McNeil was indicted for first-degree robbery, first-degree assault, and intimidating a participant in the legal process. McNeil pled not guilty. At trial, the trial court granted McNeil's motion for a directed verdict on the intimidating a participant in the legal process charge and dismissed that charge. After a three-day trial, the jury found McNeil guilty of first-degree robbery and first-degree assault. As recommended by the jury, the trial court sentenced McNeil to consecutive terms of ten years' imprisonment for first-degree robbery and eighteen years' imprisonment for first-degree assault. The jury found McNeil not guilty of being a persistent felony offender in the first degree.

McNeil filed a direct appeal, and his conviction was affirmed by the Kentucky Supreme Court in *McNeil v. Commonwealth*, 468 S.W.3d 858 (Ky. 2015). We adopt the facts from *McNeil*, as follows:

> At McNeil's January 2014 trial, [Donna] Wheeler testified that in mid-November 2012 she received several hundred dollars in settlement of a law suit and that she used some of the settlement proceeds to reserve a week's lodging for herself and [Candra] Rose at the Louisville Manor Inn on Dixie Highway in the Shively area of south Louisville. A couple of days before, she and Rose had struck up an acquaintanceship with a man who introduced himself as "B," and in the interim Wheeler had used Rose's phone to exchange a number of text messages with her new acquaintance. Wheeler testified

that one of the first things she did upon taking up residence at the hotel was to invite "B" to come visit.

According to Wheeler, "B" arrived that first evening while Rose was in the shower. Wheeler left the room briefly to buy drinks from a vending machine, and when she left the room, she testified, her purse was on the bed. Soon after Wheeler returned from the vending machines, Rose emerged from the bathroom, and Rose testified that as she came into the main room she saw "B" leaving the room with one of his hands held inside the front of his jacket, as though he was concealing something there. She called out to "B" to wait for a minute; exclaimed to Wheeler, "He's got your purse;" and when "B" began to run, ran after him out of the room and down the stairs. Both women chased "B" to the parking lot where he locked himself in his car.

Wheeler testified that she pounded on the driver's window demanding that "B" give back the purse, and Rose testified that she stood in front of the car and looked directly into "B's" eyes. He told her to move; she told him to surrender the purse. Rose testified that "B" drove slowly forward and forced her to back up a few steps, but that when she continued to block his path and to look into his eyes he suddenly accelerated and knocked her down. She testified that she became lodged beneath the car, was dragged for several feet, and was only "spit out" when "B" finally stopped, backed up a bit, and drove forward again with enough momentum to get over a speed bump.

. . .

The incident was witnessed by another person who was pulling into the parking lot at the time, and it was recorded by three hotel security cameras. The witness described and the videos depicted a driver every bit as callous as the person Wheeler and Rose claimed stole Wheeler's purse, but neither the witness nor videos could

-3-

give the jury more than a very general idea of what the driver looked like.

To prove that the driver was McNeil, the Commonwealth presented testimony by its investigators to the effect that one of the phone numbers Wheeler used to contact "B" turned out to be a Cricket company number, which, upon inquiry at a local Cricket outlet, was found to be registered to McNeil. Having made that discovery, the officers prepared a "photo pack," – an array of six photos, McNeil's and five others similar to his – which the officers then showed, separately, to Wheeler and to Rose. Both women picked out McNeil's photo from the array as very likely the person who had robbed them, and both women testified at trial that the defendant in the courtroom, McNeil, was that person to a virtual certainty. McNeil did not testify, but through cross-examination and argument he attempted to cast doubt on those identifications.

*Id.* at 861-62.

Following his unsuccessful direct appeal, McNeil filed a *pro se* motion under RCr 11.42. As grounds, he claimed numerous instances of ineffective assistance of counsel. In an order entered March 16, 2017, the trial court granted McNeil an evidentiary hearing on the issue of whether his trial counsel was ineffective for failing to investigate possible alibi witnesses but denied his motion in all other respects. The trial court appointed counsel to represent McNeil on September 14, 2018.

At the May 28, 2019 evidentiary hearing, McNeil and his trial counsel testified. On October 4, 2019, the trial court entered an order denying McNeil's motion.

"In reviewing an RCr 11.42 proceeding, the appellate court reviews the trial court's factual findings for clear error while reviewing the application of its legal standards and precedents de novo." *Ford v. Commonwealth*, 628 S.W.3d 147, 156 (Ky. 2021). "To prevail on an RCr 11.42 motion, the movant must convincingly establish he was deprived of some substantial right justifying the extraordinary relief afforded by the post-conviction proceeding." *Bratcher v. Commonwealth*, 406 S.W.3d 865, 869 (Ky.App. 2012).

The basis of McNeil's RCr 11.42 motion is his claim of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), sets forth the standard by which we measure such claims. *Gall v. Commonwealth*, 702 S.W.2d 37, 39 (Ky. 1985). "This standard is two-pronged. The defendant must show that: (1) trial counsel's performance was deficient, and (2) trial counsel's deficient performance prejudiced him." *Ford*, 628 S.W.3d at 156.

On appeal, McNeil argues the trial court erred in denying his RCr 11.42 motion based upon ineffective assistance of counsel because his trial counsel: (1) failed to investigate and present favorable alibi witness testimony at

trial; (2) failed to investigate a second telephone number found on the victim's cell phone; and (3) failed to independently investigate or interview Wheeler. He also argues the trial court erred by not granting him an evidentiary hearing on his second and third claims.

McNeil first argues his trial counsel was ineffective by failing to investigate and present favorable alibi witness testimony at trial. He stated in his memorandum in support of his RCr 11.42 motion that he informed his trial counsel in their initial meeting about three alibi witnesses: Antonio Johnson, Johnson's paramour, and Johnson's paramour's female companion. He stated they would testify he was with them at Johnson's apartment in the "3rd Street area of the South End of Louisville" on the night in question. After the evidentiary hearing and briefing by the parties, the trial court concluded there was no credible evidence to support McNeil's claim.

"As a reviewing court, on this RCr 11.42 appeal, we must defer to the findings of fact and determinations of witness credibility made by the trial judge. Thus, unless the trial court's findings of fact are clearly erroneous, those findings must stand." *Commonwealth v. Bussell*, 226 S.W.3d 96, 99 (Ky. 2007) (citations omitted).

At the evidentiary hearing, McNeil's trial counsel testified that he discussed trial strategy with McNeil with the defense centered around mistaken

identity because McNeil denied he was at the hotel when the offenses occurred. Trial counsel explained the defense also involved challenges to the photo pack and to testimony by Wheeler and Rose in which they identified McNeil as the perpetrator, and the defense also highlighted the lack of physical evidence tying McNeil to the crimes. Trial counsel testified that alibi witnesses would have supported the mistaken identity defense and that he could have followed up on any information relating to alibi witnesses had he been informed of them. Trial counsel, however, testified he had no recollection of McNeil informing him of possible alibi witnesses.

Trial counsel further testified he had created a system for handling cases due to the volume of cases he was assigned. The system included, among other things, taking notes of conversations with clients. Based upon his use of this system, trial counsel testified he was "sure" he visited McNeil in jail, spoke to McNeil on the phone, and wrote McNeil letters, but he could not provide specifics as to those events without reviewing his file.

In contradiction of trial counsel's testimony, McNeil testified that he did not meet trial counsel until a scheduled court appearance in July 2013 and did not get to speak to his counsel again until another scheduled court appearance in September 2013, and then did not speak to counsel again in person until his first day of trial. McNeil denied that trial counsel came to see him at the jail at any

point prior to his trial and stated that they never really had a chance to communicate.

McNeil testified that it was at the July 2013 court appearance that he told trial counsel about two alibi witnesses, Antonio Johnson and his paramour, Christy, but that his trial counsel failed to investigate them. McNeil testified he did not mention his alibi witnesses to trial counsel again after their initial meeting, and he did not put any information relating to his alibi witnesses in writing to trial counsel despite writing to him three or four times. McNeil admitted he did not inform his prior trial counsel about the alibi witnesses.

McNeil obtained a copy of the file prior to the hearing, but trial counsel was not given an opportunity to review it. The only document McNeil introduced from the file was a December 2013 letter from trial counsel in which he explained to McNeil about his busy trial schedule and stated: "I have not forgotten about your case." Therefore, McNeil failed to provide any evidence from the file to support his claim that he had informed trial counsel about these alibi witnesses. None of McNeil's alibi witnesses testified at the evidentiary hearing, so it was unclear whether they could be located or whether they would have in fact provided McNeil with an alibi.

The trial court, in denying McNeil's RCr 11.42 motion, cited McNeil's testimony at the evidentiary hearing that, after the close of proof at trial,

he remembered the jury submitting a question about where he was at the time of the offense. McNeil testified he recalled the trial judge stating, outside the presence of the jury, that the jury was required to reach its verdict based upon the evidence presented during the trial.

In determining there was no credible evidence that McNeil gave trial counsel the alibi witness information, the trial court stated:

> The Court finds that it is highly unlikely and not credible that [trial counsel], given timely information about an alibi witness, would have failed to record or pursue that information, given that fact that the defense which he and Movant intended to pursue was one of a mistaken identification. Any testimony of a credible alibi witness would have supported the chosen defense. The Court finds it highly probable that Movant's allegation of an alibi witness was prompted by the juror's question about where Movant was at the time of the offense, and may explain Movant raising the contention now, and for the first time according to [trial counsel's] recollection. Because the Court finds that there is no credible evidence that the alibi witness information [w]as given to [trial counsel], there is therefore no basis for an ineffective assistance of counsel claim based on such.

After carefully reviewing the proof submitted at the evidentiary hearing, we conclude the trial court's finding that McNeil did not inform his trial counsel about the alibi witnesses is not clearly erroneous. Given the contrary testimony, the trial court was entitled to decide who to believe and chose to believe trial counsel over McNeil.

Based upon this finding, we further conclude the trial court did not err in ruling McNeil failed to overcome the strong presumption that his trial counsel performed reasonably and effectively. Counsel's performance was not deficient for failing to investigate witnesses of whom he had no reason to be aware. As noted in *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

McNeil's second argument is that his trial counsel was ineffective for failing to investigate a second phone number found in the victim's cell phone log and that the trial court erred in denying this claim without an evidentiary hearing. Specifically, McNeil argues Wheeler initially gave the police two phone numbers she believed belonged to the suspect, and this second number was, therefore, the key to identifying the real "B."

In denying McNeil's claim on this ground, the trial court determined McNeil failed to establish the second prong under *Strickland* – that he was prejudiced by his trial counsel's failure to investigate:

> To the extent that trial counsel may have failed to try to procure records of the second cellphone number, Movant has not established that the outcome would likely have been different had the owner of that number been found.

-10-

> Wheeler carried on an extensive text message conversation with "B" at a cellphone number linked to Movant, which culminated in "B" coming to the motel room shortly after a text message. Both Wheeler and Rose identified Movant in photo packs as the likely perpetrator, and both positively identified him in open court. Given Movant's known link to the number, it is mere speculation that the owner of another cellphone to which Wheeler communicated would have been identified as the perpetrator. Movant has not established that but for counsel's failure to investigate the records of an additional cellphone, the outcome likely would have been different.

We agree with the trial court's conclusion and rationale.

"A perfect trial is never required. What is required is a fair trial." *Stanford v. Commonwealth*, 854 S.W.2d 742, 748 (Ky. 1993). "The critical issue is not whether counsel made errors but whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory." *Haight v. Commonwealth*, 41 S.W.3d 436, 441 (Ky. 2001), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151, 159 (Ky. 2009). Here, there was substantial evidence to support the jury's verdict.

Also, McNeil is not airing a known grievance. Instead, he speculates that investigating this second number would have helped his case. This is evident from his use of words such as "perhaps" or "likely" when discussing whether the investigation into this second number would have revealed the perpetrator. "A claim that certain facts *might* be true, in essence an admission that [a]ppellant does

not know whether the claim is true, cannot be the basis for RCr 11.42 relief." *Mills v. Commonwealth*, 170 S.W.3d 310, 328 (Ky. 2005), *overruled on other grounds by Leonard*, 279 S.W.3d at 159. *See Gilliam v. Commonwealth*, 652 S.W.2d 856, 858 (Ky. 1983).

McNeil's third argument is that his trial counsel was ineffective for failing to investigate or interview Wheeler regarding why, in her initial statement to the police, she characterized the suspect, "B," as a friend of Rose's ex-boyfriend and that an evidentiary hearing should have been held on this issue. McNeil argues that interviewing Wheeler would have enabled his trial counsel to impeach her on this statement, which he states she denied making at trial. The trial court summarily denied this claim because McNeil again failed to show how he was prejudiced by his trial counsel's failure to investigate any such inconsistency.

We note that McNeil provided no record citation to Wheeler's denial of her prior statement. "It is well-settled that an appellate court will not sift through a voluminous record to try and ascertain facts when a party has failed to comply with its obligation . . . to provide specific references to the record." *Parker v. Commonwealth*, 291 S.W.3d 647, 676 (Ky. 2009). *See* Kentucky Rules of Civil Procedure (CR) 76.12(4)(c)(iv). In our review of the record, we did not find where, at trial, Wheeler denied her prior statement that the suspect was a friend of Rose's ex-boyfriend. Because it appears the denial upon which McNeil bases this

-12-

claim did not occur at trial, his claim is refuted by the record, and the trial court properly denied it.

Even if, as McNeil argues, Wheeler denied this prior statement, we agree with the trial court that he failed to show how any failure by his trial counsel to investigate or to aggressively cross-examine Wheeler on her characterization of "B" as a friend of Rose's ex-boyfriend prejudiced him. Wheeler testified at trial she did not know McNeil well, as she had only briefly met him on two prior occasions. It is doubtful that any confusion Wheeler may have had with respect to "B" being a friend of Rose's ex-boyfriend would have seriously impacted her credibility. Most important, however, is the fact that the jury's verdict is supported by substantial evidence in that both Wheeler and Rose identified McNeil in open court with absolute certainty as the man who, after carrying on an extensive text message conversation with Wheeler, came up to their hotel room, stole Wheeler's purse, and ran over Rose with his car. This could be true even if McNeil did not go by the name "B" or if he was not a friend of Rose's ex-boyfriend, as Wheeler told the police.

Accordingly, the trial court did not err in denying McNeil evidentiary hearings on the second and third issues as an evidentiary hearing is only required when the allegations, *if true*, would warrant relief. *Fraser v. Commonwealth*, 59 S.W.3d 448, 452 (Ky. 2001). As explained above, the trial court correctly ruled

that McNeil failed to show he was prejudiced by any such failure by his trial counsel to investigate these issues. Because McNeil failed to show he was entitled to relief under RCr 11.42, the trial court properly dismissed these claims without a hearing. *Fraser*, 59 S.W.3d at 452; RCr 11.42(2).

For the foregoing reasons, we affirm the order of the Jefferson Circuit Court denying McNeil's RCr 11.42 motion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Whitney Wallace
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Leilani K. M. Martin
Assistant Attorney General
Frankfort, Kentucky