RENDERED: DECEMBER 1, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0164-MR

KAREEM M. EDWARDS

APPELLANT

v.

APPEAL FROM LYON CIRCUIT COURT
HONORABLE JAMES REDD, JUDGE
ACTION NO. 17-CR-00162

COMMONWEALTH OF KENTUCKY

APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, COMBS, AND EASTON, JUDGES.

EASTON, JUDGE: Kareem Edwards ("Edwards") appeals the denial of his RCr[1]

11.42 motion in which he alleged a *Brady*[2] violation and ineffective assistance of

counsel. Finding no *Brady* violation and no ineffective representation, we affirm.

---

[1] Kentucky Rule of Criminal Procedure.

[2] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) (due process guaranteed for state prosecutions prohibits the state from withholding material evidence from an accused).

FACTUAL AND PROCEDURAL BACKGROUND

In June of 2017, Edwards was an inmate at the Kentucky State Penitentiary ("KSP") in Eddyville. He was serving a thirty-year sentence for murder to which he pled guilty.[3] On June 29, 2017, a riot broke out at KSP. During this riot several prison officers were assaulted and injured. Edwards was charged for his participation in the riot and with three counts of assault on officers[4].

After a jury trial in May of 2019, the jury convicted Edwards on all charges. The jury fixed the sentences at two years for the riot and five years on each of the assaults. The jury further recommended consecutive sentences, which the circuit court imposed for a total sentence of seventeen years. The trial decision was affirmed on direct appeal by this Court.[5]

In December of 2021, Edwards filed his *pro se* RCr 11.42 motion. Initially, the circuit court denied the motion without appointment of counsel and a

---

[3] Fayette Circuit Court, Case No. 06-CR-00099.

[4] Although Edwards initially faced one count of second-degree assault and two counts of third-degree assault, the Commonwealth reduced the second-degree assault charge to third-degree assault for trial.

[5] *Edwards v. Commonwealth*, No. 2019-CA-000891, 2020 WL 5084269 (Ky. App. Aug. 28, 2020). This Court also affirmed on the simultaneous appeal by Edwards of prison disciplinary actions imposed because of the riot and assaults. *Edwards v. Department of Corrections*, No. 2018-CA-001725-MR, 2020 WL 4515458 (Ky. App. Jul. 24, 2020).

hearing. To outline the claims, we will start with Edwards' motion and the circuit court's first order.

Edwards' nineteen-page motion may be fairly read to assert some typical and general complaints about appointed counsel. Edwards argues the attorney did not adequately investigate potential testimony of witnesses, even though the attorney had retained an investigator in this case. The investigator primarily worked to gather evidence to support a change of venue. Edwards made a specific allegation about two fellow inmates who Edwards claimed could have provided information about Edwards' location when the altercations began.

Other complaints include a failure to move to dismiss two of the assault charges because the Indictment was not specific enough about those charges. Edwards also felt a continuance should have been sought when the Commonwealth did a discovery "dump" just prior to the start of the trial.

The main concern was about a claimed *Brady* violation. Edwards believed the Commonwealth failed to provide to him a video of him after he had been restrained. He thinks his attorneys should have insisted on getting this evidence for use at trial. He believes the evidence could have impeached testimony given by one of the assaulted officers about the absence of such videos. Edwards believes the video also would have shown that this assault victim was not really injured.

The first Order Denying RCr 11.42 Relief denied all asserted claims. A later Order on Defendant's Motion for Additional Findings granted a hearing on only two claims, specifically the claim about the identified witnesses and the video supposedly withheld in violation of *Brady*. The judge who had presided over the trial and the initial RCr 11.42 proceedings was succeeded by another judge who conducted the evidentiary hearing. After the hearing, the circuit court again denied the RCr 11.42 motion in its entirety. This appeal followed.

## STANDARD OF REVIEW

We must start by recognizing that a *Brady* violation claim is separate from a claim of ineffective assistance of counsel, although failure by counsel to address a discovered *Brady* claim could be part of ineffective assistance. We will address the merits of the *Brady* claim and the ineffective assistance of counsel with or without a *Brady* violation. An appellate court reviews *de novo* whether a *Brady* violation has occurred. *Commonwealth v. Bussell*, 226 S.W.3d 96, 1001 (Ky. 2007).

The standards which measure ineffective assistance of counsel are set out in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). First, the defendant must show that counsel's performance was so deficient that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment of the United States Constitution. *Id*. at 687, 104 S. Ct. at 2064.

Second, the defendant must show the counsel's deficiency prejudiced the defense by depriving the defendant of a fair proceeding, a proceeding whose result is reliable. *Id.* "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

The critical issue is not whether counsel made errors but whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory. *Id.* A defendant is not guaranteed errorless counsel, or counsel judged ineffective by hindsight, but counsel likely to render and rendering reasonably effective assistance. *McQueen v. Commonwealth*, 949 S.W.2d 70, 71 (Ky. 1997).

*Strickland* requires a court to indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U. S. at 689, 104 S. Ct. at 2065. The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound strategy. *Id.*

"[W]hen reviewing a trial court's findings of fact following an RCr 11.42 evidentiary hearing, an appellate court utilizes the clearly erroneous standard set forth in Kentucky Rules of Civil Procedure (CR) 52.01. Findings of fact are not clearly erroneous if supported by substantial evidence. Even though claims of

ineffective assistance of counsel are subject to de novo review, a reviewing court should defer to the determination of facts made by the trial judge." *Saylor v. Commonwealth*, 357 S.W.3d 567, 570-71 (Ky. App. 2012) (citations omitted). Overall, a circuit court's denial of an RCr 11.42 motion is reviewed for an abuse of discretion. *Teague v. Commonwealth*, 428 S.W.3d 630, 633 (Ky. App. 2014).

ANALYSIS

RCr 11.42(2) requires specific allegations in a motion. General or vague allegations, such as failure to investigate or a generalized discovery complaint do not justify a hearing. In this category is the allegation of a discovery "dump" on the morning of trial. Nowhere in the motion does Edwards identify anything in these materials which had not already been made available or any new item which was introduced to his prejudice during the trial.

When we examine the evidence in the record, we see hundreds of pages of medical records documenting the injuries to one of the officers who sustained considerable dental injury. Again, there is no specific allegation of anything not previously disclosed. When we consider that third-degree assault does not even require evidence of an injury, the vague complaint about a discovery "dump" cannot be shown to have necessitated a hearing much less a trial continuance or any actual prejudice to Edwards at his trial.

-6-

The complaint about the refusal to dismiss two counts of third-degree assault does not depend on any allegation of facts, as the Indictment says what it says. This presents only a question of law. Edwards believes Counts 3 and 4 of his Indictment alleging two counts of third-degree assault were deficient because the counts did not contain the name of the charge against him. This argument is specious, and Edwards' attorney had no obligation to file a completely meritless motion to dismiss.

Edwards relies on *Parker v. Commonwealth*, 291 S.W.3d 647 (Ky. 2009). This case indeed explains that all that is required for a valid charge in an indictment is for the charge to be named. *Id.* at 656. Edwards suggests each count within an indictment therefore must contain the name of the charge. *Parker* does not say this, and this interpretation is contrary to well-established law.

*Parker* recognized that indictments under the present procedural rules no longer required a listing of every element of a charge. *Thomas v. Commonwealth*, 931 S.W.2d 446, 448-49 (Ky. 1996) (summary of the law on this subject relied upon in *Parker*). The four charges in Edwards' Indictment are on its first page. The heading of the Indictment lists the applicable statute (KRS[6] 508.025) and explains Edwards is being indicted for two counts of third-degree assault.

---

[6] Kentucky Revised Statutes.

Counts 3 and 4 track the language of the applicable statute and contain the elements of third-degree assault. The victims of the assaults are named and identified as KSP officers with the allegation that Edwards "did intentionally cause or attempt to cause physical injury to" the officers. Even *Parker* acknowledged that tracking the language of the statute in an indictment is enough. *Parker*, 291 S.W.3d at 656.

"An indictment . . . is sufficient if it informs the accused of the specific offense with which he is charged and does not mislead him." *Wylie v. Commonwealth*, 556 S.W.2d 1, 2 (Ky. 1977). The Indictment in this case was clearly sufficient. A motion to dismiss it would have been denied and could have been subject to sanctions for filing a frivolous motion.

The allegation about fellow inmate witnesses was specific to a point in that names were provided. Edwards also suggests that these two men were with him at the time of the riot. Edwards, who clearly has been able to gather materials and write a detailed motion, did not provide an affidavit from either witness with his RCr 11.42 motion. We note assigned counsel for the RCr 11.42 proceedings properly concluded this argument had no merit as indicated by the essential abandonment of it for the evidentiary hearing.

This complaint about these witnesses presents a curious problem for Edwards in that, regardless of where Edwards may have been when the riot started,

Edwards also admits the altercation with two of his victims but suggests he acted in self-defense as stated at page 4 of Edwards' motion. The videos from multiple vantage points which were shown to the jury show what they show, including Edwards' interactions with the officers. A jury found them convincing enough for conviction. Edwards has not shown any deficient performance by his counsel as to these witnesses who might have theoretically said Edwards did not start the riot. That did not prevent a conviction for participation in the riot. Edwards has shown no prejudice to his case relating to these witnesses.

This gets us to the only substantive issue which Edwards' RCr 11.42 counsel properly focused on at the hearing – the video of Edwards with Officer Neely and other officers after the assaults while Edwards was in a restraint chair. The Commonwealth conceded that they did not produce this video in discovery. Edwards was able to obtain a copy of this video through his civil rights attorneys by way of open records requests. The first records request document has a notation that when the provided disc was opened on January 29, 2018, the disc did not have anything on it. A second records request document dated February 12, 2018, does not have this notation, and Edwards signed to indicate he was satisfied that his records request had been fulfilled.

Significantly, whether he saw the video or not, Edwards was aware of the video at the time of the trial. Edwards refused to meet with his assigned

attorney and investigator the week prior to the trial after they had driven some distance to confer with him to prepare for the trial.  Edwards also refused to talk with his attorney just before trial began.  Edwards also insisted on rejecting his counsel's advice not to be seen by the jury wearing prison clothes and shackles.

At page 12 of his motion, Edwards supposedly quotes his trial attorney as saying that she understood his effort to set up an RCr 11.42 motion for later.  If that is what Edwards was doing, that cannot be allowed to succeed. Edwards was obligated to let his attorney know about the video he had obtained in a timely manner rather than wait to see if the Commonwealth would provide it. Edwards cannot even now refuse to adequately document what his supposed witnesses would say and then blame a lawyer for not investigating this or presenting the non-existent or questionable evidence at a trial or a hearing.

Edwards should not be heard to complain about any failures of his counsel which could have been addressed during refused meetings.  Edwards' cooperation may have made for a better record of his *Brady* claim for appeal.  The Commonwealth suggests that any *Brady* violation then should have been addressed on the direct appeal of this case.  Perhaps, but since Edwards would then just blame his RCr 11.42 or appellate counsel for this failure, we should address the *Brady* claim while we look at ineffective assistance of counsel.

Edwards insists the video could serve two exculpating purposes. It could impeach Officer Neely, who testified that there was no video recording of Edwards' assault on him. The video also showed Neely after the assault, and Edwards believes this was helpful evidence to show that Neely was not actually injured. As we will see, review of Neely's trial testimony and the video show that neither of these claims is sustainable.

During his testimony,[7] Neely explained that Edwards' assault on him occurred when Neely and others were escorting Edwards inside a cell block building to be placed in a restraint chair. During this escort, Edwards hit Neely in the face and ribs with his elbow. Neely testified that this assault was not on video. When asked why, Neely explained that there was no stationary or fixed camera in the area where it occurred. Neeley also said: "Normally, everything that is done as far as restraint chair is recorded, but due to the sheer number of people we were putting in the restraint chairs, we didn't have enough cameras."[8]

On cross examination, Edwards' attorney asked Neely about Officer English, who is mentioned in a recording played to the jury. Indeed, the recording captures a question asking where English was. Neely explained that English was

---

[7] Neely's entire testimony was not lengthy and appears at 1:31:57-1:47:54 of the DVD of the trial on May 19, 2019.

[8] Trial testimony at 1:43:41-1:44:01.

in the same building but not in the area where the assault occurred. Neeley confirmed there was no video of Edwards' being taken in for the purpose of getting him to the restraint chair. In a properly strategic cross examination, Edwards' trial attorney was able to confirm there was no video of the assault to support Neely's testimony about it. Edwards' attorney then questioned Neely about Edwards being able to elbow the officer even though cuffed and shackled in full restraints to suggest doubt about Edwards hitting Neely.

The video Edwards obtained was of him sitting in a shower already in the restraint chair. The video lasts for ten minutes and thirty-one seconds. English is the narrator of the video, but it was taken by another officer who identifies himself as Massey. A team of other officers, including Neely, are also seen on the video.

The officers attempt to remove Edwards from the chair. As soon as Edwards is standing, the video shows Edwards scuffling with the officers leading to Edwards' being tazed. The officers decide to return Edwards to the chair. During this process, the audio reveals Neely saying Edwards tried to bite him when he was returned to the chair. In response to this attempted bite, Edwards is tazed again. Because of Edwards' continued violent behavior, the officers decided to leave arm and leg restraints on Edwards. This required a medical check also seen on the video.

Nothing on this video impeaches Neely's trial testimony. Neely said there was no recording of the elbowing assault by Edwards. The video of the later recorded interaction in the restraint chair does not contradict this. The existence of the video also does not otherwise impeach Neely about recordings. He said they usually tried to record everything but could not on that day. He acknowledged English was in the same building but was not where the assault happened, which another recording confirms.

The recording also does not help Edwards in his argument that Neely was not really injured. Exhibits 14 and 15 show Neely's injuries. He has a swollen area on his right cheek just below the eye. He has a bruised area on his right side near his ribs. The video taken just after the assault does not show a bruise because Neely is still clothed such that any bruise could not be seen, even if we ignore common experience of the time it may take for a bruise to appear.

Swelling also takes some time. While the video of Neely's face does not show the same level of swelling as shown in Exhibit 14, a careful and unbiased repeated review of the video indicates some swelling to the right side of Neely's face, and Neely winces as the camera shows his face. Regardless, the video certainly does not prove that a third-degree assault did not occur.

Edwards forgets that third-degree assault does not even require any injury. A mere attempt to cause injury is sufficient. *See Mullikan v.*

*Commonwealth*, 341 S.W.3d 99, 105-06 (Ky. 2011). Edwards' apparent belief that the video helps his case is beyond wishful thinking. In fact, the video could have served as proof of an additional act of third-degree assault in the form of Edwards' attempt to bite Neely.

To establish a *Brady* violation, Edwards must show that the Commonwealth withheld something he did not know about. *Bussell*, 226 S.W.3d at 100. Even if Edwards could pass this hurdle, he must prove "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. at 99-100. The existence of this video did not impeach Neely and thus did not contribute to Edwards' defense on that ground. The video did not directly dispute Neely's having been injured, which was not required anyway. If anything, the video would have hurt Edwards at his trial because it documented his continued belligerence and a possible separate and additional act of third-degree assault toward Neely.

CONCLUSION

There being no violation of *Brady*, we look finally at the overall denial of the RCr 11.42 motion. There is no clearly erroneous fact found by the circuit court from the evidentiary hearing. Edwards failed to show any deficiency in his attorney's representation. Whatever Edwards may think of that representation, he has not and could not show prejudice to his case affecting its

-14-

ultimate outcome. The circuit court did not abuse its discretion in denying the RCr

11.42 motion. The Lyon Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Aaron P. Riggs
LaGrange, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Thomas A. Van De Rostyne
Assistant Attorney General
Frankfort, Kentucky